David Lee ALLEN, Petitioner,

v.

Purtie HARVEY et al., and Waverly Housing Authority, Respondents.

Supreme Court of Tennessee.

June 29, 1978.

**830**

Mark H. Collier, Waverly, Claude Callicott, Nashville, for petitioner.

John Lee Williams, Porch, Peeler & Williams, Noble L. Freeman, Waverly, Robert L. Littleton, Dickson, for respondents.

OPINION

BROCK, Justice.

This is an eminent domain proceeding in which no question is raised as to the right to condemn or the amount of compensation. The sole question is who is entitled to receive the $11,300.00 paid into court as damages for the taking of the land. Specifically, we must decide whether a child born out of wedlock may inherit from and through his father. The trial court concluded that he could not and the Court of Appeals affirmed. We granted certiorari.

The property in question consists of three tracts of land in Humphreys County taken by the plaintiff in 1971 for urban renewal, pursuant to authority granted by Chapters 8 through 11 of Title 13 of Tennessee Code Annotated. One of the tracts of land belonged to Boyd Allen who had two children, Louis Allen and Mary Francis Marable. Louis died in a work-related accident in 1942. His father died at some later date but before the death of his daughter who owned the two remaining tracts of land taken by the housing authority. Mary Frances, who had no children, apparently died shortly before the property in question was condemned.[1] All three died intestate.

In its suit condemning the three tracts of land, the Waverly Housing Authority stated that it had been "unable to ascertain exactly who were the lawful heirs of the late Mary Frances Marable." Five first cousins and an uncle of the deceased were listed as possible heirs-at-law. Plaintiff also stated that "one David Lee Allen may be some relation, adopted or otherwise, to the late Mrs. Marable. It is believed that he is incompetent." In answer, the cousins of Mrs. Marable accepted the valuation of the property assessed by the jury of view, stated that they were unaware of the whereabouts of Mrs. Marable's uncle, and further stated that they believed "that David Lee Allen was the son of Loui[e] (or Louis) Allen, the deceased brother of Mary Frances Marable, but [did] not believe that said

---

1. Plaintiff's complaint states that "D. Scott Porch, Jr. is the appointed and acting administrator of [Mrs. Marable's] estate which is presently being administered upon."

Louie Allen was married to the mother of David Lee Allen, [and did] not know if he was ever adopted by Louie Allen."

The trial judge appointed a guardian *ad litem* for David Lee Allen, for Mrs. Marable's uncle, and for any unknown heirs of the late Mary Frances Marable.

Three years later, in 1974, David Lee Allen by his retained counsel filed an answer to the original complaint, denying that he was incompetent and also denying that the cousins of Mrs. Marable were entitled to inherit from her since, under our laws of descent and distribution, he alone was her lawful heir. Concurrently, Allen filed a cross-complaint for a declaratory judgment that he was the son of Louis Allen and that, on the death of Mary Frances Marable, he was entitled to inherit from her under our laws of intestate succession.

The evidence considered by the trial judge showed that Louis Allen married a woman named Jenny Mays in 1924 and that, while they lived together only two or three years before separating, they had never divorced. Sometime prior to his death in 1942, Louis began to live with Mary Lou Howard. Mary Lou gave birth to a son, David Lee Allen, whom Louis claimed as his own child and supported until his death some six months after the child was born. David's birth certificate showed Louis Allen to be his father and also showed that his parents were married. In an earlier court proceeding awarding workmen's compensation benefits to David after Louis's death, the doctor who delivered David testified that the information recorded on the child's birth certificate had been supplied by both parents.

After his son's death, Boyd Allen took Mary Lou and her young son into his home for a short while until Mary Lou married another man. At that time or shortly thereafter, David was taken into the home of his aunt, Mary Frances Marable. In 1955 Mrs. Marable applied for letters of guardianship for David, stating to the coun-

ty court clerk that David was "one of her kin" and "a minor heir in her family" and that she "felt obligated to take care of him." The guardian bond referred to David as a "minor heir" of Mrs. Marable. David lived with his aunt until 1956 when he was committed to the Vocational School for Colored Boys. His commitment papers stated that David was the son of Louis Allen and Mary Lou Howard and that he had lived with his aunt, Mary Francis Marable, for most of his life.

From all of the evidence the trial judge concluded that "the record fully supports the claim that David L. Allen is the natural son of Louis Allen but the evidence is that his parents were never married . . . ." He therefore concluded that, under our law, David "would not have inherited property from his father and therefore did not inherit the property in question from his natural aunt under the statutes of desent [sic] and distribution," and ordered that further proof be taken to determine the next of kin of Mary Frances Marable.

David Lee Allen appealed the trial court's decision to the Court of Appeals on several legal theories, including denial of the equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution as well as by Article I, Section 8 and Article XI, Section 8 of the Tennessee Constitution. The Court of Appeals, however, affirmed the findings and conclusions of the trial court and we granted Allen's petition for certiorari.

■ At common law a child born out of wedlock[2] was *nullius filius*—the child of nobody. Without parents in the eyes of the law, it followed that the child had no right to inherit from either of his natural parents. He was considered to have no "heritable blood." Not only was the child incapable of inheritance but he could have no heirs except those of his own body. J. Kent, 2 *Commentaries on American Law* 212 (9th ed. 1858); 5 *American Law of*

---

2. In the sixteenth century, a child born out of wedlock was generally referred to as a "natural child." Hubback, EVIDENCE OF SUCCES-

SION 252–53 (1844). Note that T.C.A. § 36–308, enacted in 1970, prohibits legal reference to an "illegitimate" person.

*Property* § 22.33 (A. J. Casner ed. 1952). *See Brown v. Kerby,* 28 Tenn. 460 (1848); R. Pritchard, 2 *The Law of Wills and Administration of Estates* § 779 (H. Phillips ed. 1955). *See generally* H. Krause, *Illegitimacy: Law and Social Policy* (1971).

In this country, however, state legislatures gradually enacted statutes recognizing children born out of wedlock as children of their mother, thus ameliorating somewhat the harsh rule of the common law. *See* C. Vernier, *American Family Laws* § 249, Table CXVIII (1936).

As early as 1805 our statutory law provided for judicial *legitimation* of a child born out of wedlock,[3] a proceeding "remov[ing] the taint of bastardy, and giv[ing] such children the same inheritable blood as if they had been born legitimately." *Scott v. Wilson,* 110 Tenn. 175, 179, 75 S.W. 1091, 1092 (1902). The common-law rule precluding inheritance by "illegitimates," however, was not altered until 1819 when it was provided:

> "That where any woman shall die intestate, leaving natural born child or children, and no legitimate child or children, such natural born child or children, shall take by the general rules of descent and distribution, the estate real and personal of his, her or their mother, and should either of such children die intestate without child, his or her brothers and sisters shall in like manner take his or her estate . . . ." Public Acts of 1819, ch. 13.

Under this Act, a child born out of wedlock could inherit from his or her mother—provided the mother had no "legitimate" child or children. *Turnmire v. Mayes,* 121 Tenn. 45, 114 S.W. 478 (1908). Thus, the 1819 Act "conferr[ed] inheritable blood upon *illegitimates* . . . to a limited degree." *Id.* at 53, 114 S.W. at 480 (emphasis added.)

Chapter 39 of the Public Acts of 1851–52 provided statutory heirs—other than those of his own body—for a person born out of wedlock who died intestate. If such person had no child or children, the statute provided that both real and personal property passed to the surviving wife or husband and, if no spouse survived, to the mother. If the mother was dead, the estate passed to the brothers and sisters of the decedent by his or her mother or to their descendants.[4]

Presented with a situation where a child born out of wedlock died intestate without issue but leaving surviving half brothers and sisters (born to the same mother in lawful wedlock), our Supreme Court held, in *Riley v. Byrd,* 40 Tenn. 20 (1859), that the half sisters and brothers born in wedlock could share in the estate of the half brother born out of wedlock.

In *Woodward v. Duncan,* 41 Tenn. 562 (1860), the Court held, however, that half sisters born out of wedlock could not share in the inheritance of their childless half brother along with his full sisters who were born, as was the decedent, in lawful wedlock. The Court stated: "The common law-rule must prevail as to that, as there has been no change by any Statute. We are not disposed to go beyond the Legislature in removing the checks upon illicit intercourse, and the stigma from bastardy. The cause of good morals forbids it." *Id.* at 564.

As the Court later noted: "[t]hese two cases illustrated the inequality which was worked under this act." *Laughlin v. Johnson,* 102 Tenn. 455, 459, 52 S.W. 816, 817 (1899).

For some reason lost to history, the salient features of the 1819 Act were not brought forward into the 1858 Code and thus, by this omission, were repealed. *See*

---

3. Pub.Acts of 1805, ch. 2, § 1 gave the courts " . . . full power and authority to alter the name of any illegitimate person, on application of any person wishing to make legitimate any of their offspring not born in wedlock: *Provided* said applicant intends to make said illegitimate person, heir, or joint heir to his or her estate."

4. Chapter 34 of the Public Acts of 1885 extended this statutory scheme by providing for the disposition of the estate of a person born out of wedlock who died without spouse, issue, mother or brothers and sisters. In such case, the 1885 Act provided that his estate would pass as would the estate of a person born in lawful wedlock without surviving relatives on his father's side.

*Dennis v. Dennis,* 105 Tenn. 86, 58 S.W. 284 (1900); *Kelly v. Jackson,* 2 Shan.Cas. 198 (1877). *See generally* Williams, *A History of Codification in Tennessee,* 10 Tenn.L. Rev. 61, 69–78 (1932). In 1867, however, "a more advanced step in effectuating the general design to give ample relief to this unfortunate class of persons," *Laughlin* at 458, 52 S.W. at 817, took the place of the 1819 Act:

" . . . where any woman shall die intestate, having a natural born child or children, *whether she also leave a legitimate child or children,* or otherwise, such natural born child or children shall take, by the general rules of descent and distribution, *equally with the other child or children* the estate, real and personal, of his, her, and their mother; and should either of such children die intestate, without child, his or her brothers and sisters shall, in like manner, take his or her estate." Public Acts of 1866–67, ch. 36, § 10, *codified as* T.C.A. §§ 31–107 and 31–205 (1955) (emphasis added).

The 1867 Act corrected the "inequality" of the 1819 Act by creating "mutual rights of inheritance as between legitimate and illegitimate brothers and sisters when either should die intestate and without child," *Laughlin* at 460, 52 S.W. at 817, and, thus, "remove[d] the taint of illegitimacy, so far as to confer inheritable blood on the natural born child," *id.* in those limited circumstances.

Although, in 1949, a second method of *legitimation* (by subsequent intermarriage of the parents) was legislatively sanctioned,[5] the common-law rule denying an "illegitimate" child's right to inherit from his father was not modified until 1955 when our legislature provided that a child born out of wedlock could inherit from his father if the issue of paternity had been determined under the provisions of Chapter 2 of Title 36 of Tennessee Code Annotated and

if a court order of paternity and support had been entered. Public Acts of 1955, ch. 186, § 13, *codified as* T.C.A. § 36–234. The 1955 Act provided that if the above conditions were met, "the child shall be a legitimate child of the [father] *for the purpose of inheriting from [him]."* (Emphasis added.) The child himself was not thereby deemed to be "legitimate." Rather, upon a judicial determination of the father-child *relationship,* "inheritable blood" was legally conferred upon the child.

Finally, in 1978, our legislature provided that, for purposes of intestate succession, a person born out of wedlock is a child of his father as well as his mother if "paternity is established by an adjudication before the death of the father *or is established thereafter by clear and convincing proof . . ."* Public Acts of 1978, ch. 763, § 3.

■ In this case, the trial court found that David Lee Allen was the son of Louis Allen but that his parents were never married. The Court of Appeals concurred in the trial judge's finding. While we have some doubt about the sufficiency of the evidence supporting this determination, upon this concurrent finding the facts are conclusively presumed before the Court. T.C.A. § 27–113. No evidence was adduced at trial that David was legitimated or that his paternity was ever adjudicated.

■ Under our statutes of descent then in effect, had David been "legitimate" or had he been "legitimated" or his paternity established by adjudication, he would have inherited his father's share of Boyd Allen's tract of land, the two tracts of land owned by his aunt in her name, and her share of Boyd Allen's real property. *See* T.C.A. § 31–101 (1955). But, despite the legislature's final rejection of the remnants of the common-law rule restricting the inheritance rights of a child born out of wedlock, Public Acts of 1978, ch. 763, § 3, David's rights as

---

5. Pub.Acts of 1949, ch. 70, § 1, *codified as* T.C.A. § 36–307, provided that if the parents of a child born out of wedlock subsequently intermarry, the child "shall become legitimate for all purposes and entitled to all the rights and privileges of legitimate children, without the

necessity of any [legitimation] proceedings . . . ." This Act included marriages "later found to have been [found] illegal, void or voidable, [if] the father recognizes or holds said child out as being his." Pub.Acts of 1949, ch. 70, § 1.

an heir had been statutorily expanded only to the extent that he could inherit from his mother or her family at the time relevant to a determination of his rights in this case. The *heart* of the common-law rule, however—the denial of "heritable blood" to a child born out of wedlock—had been legislatively excised in 1955 by the enactment of T.C.A. § 36–234, allowing a child born out of wedlock to inherit from his father upon a judicial determination of paternity. Although the 1955 Act expanded the inheritance rights of children born out of wedlock only upon an adjudication of paternity before the death of the father, we interpret the *policy* of that Act to be one of sanctioning inheritance if the father-child relationship is clearly established.

In this case, the trial judge found that "the record fully supports the claim that David L. Allen is the natural son of Louis Allen." Louis openly acknowledged that he was David's father and claimed the child as his. Until his premature death, Louis lived with and supported the child. Even after Louis's death, his son lived with Louis's father and, subsequently, with his sister as a child of their extended family. None of the parties to this suit has questioned that Louis Allen was the father of David Allen.

■ Because, as Sir Edward Coke—the champion of common law—said, "the common law itself is nothing but reason," *First Part of the Institutes of the Laws of England* (1628), we conclude that David Allen can inherit from and through his father and, thus, that he is entitled to the proceeds of the condemnation of his family's land.

Our conclusion is persuaded not only by the policy evidenced by the foregoing analysis of Tennessee law but by the decision of the United States Supreme Court in *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). In *Trimble,* the Court held unconstitutional an Illinois statute that permitted only legitimate children to inherit from a father who died intestate. The Court found that the state's legitimate interest in establishing an orderly method of disposition of property at death did not justify its broad exclusion of "illegitimates" from the state's statutory scheme of intestate succession. Acknowledging that "[t]he more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their father's estates than that required either for illegitimate children claiming under their mothers' estates or for legitimate children claiming generally," 430 U.S. at 770, 97 S.Ct. at 1465, the Court, nevertheless, insisted that "[f]or at least some significant categories of illegitimate children of intestate men, inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws. *Because it excludes those categories of illegitimate children unnecessarily,* [the Illinois statute] is constitutionally flawed." *Id.* (Emphasis added.) Quoting from its decision in *Gomez v. Perez,* 409 U.S. 535, 538 (1973), the Court noted that problems of proving paternity "are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination." 430 U.S. at 772, 97 S.Ct. at 1466.

While significant variations exist between Tennessee law and Illinois law with regard to the inheritance rights of a child born out of wedlock,[6] we agree with Justice Powell who wrote for the Court's majority in *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768 (1972):

"The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical

6. Illinois had no statute such as T.C.A. § 36–234, authorizing inheritance from the father of a child born out of wedlock if paternity has been adjudicated. Thus, in *Trimble,* although the Circuit Court of Cook County had entered a paternity order finding Gordon to be the father of Deta Mona Trimble about a year before Gordon's death, the child was not allowed to inherit her father's estate. Under the same facts, Tennessee law would have allowed her to inherit.

and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrong-doing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent."

■ Although we think that a child born out of wedlock must meet a stricter or higher standard of proof of paternity than is required for a child born within wedlock, denial of an inheritance to a child whose father openly and consistently acknowledged the father-child relationship and who lived with the child and provided for his support would, in our opinion, deprive the child of his inheritance "unnecessarily" as forbidden by *Trimble* and would also belie the "reason" that is the strength of the common law.

■ The decision we reach today—that a child born out of wedlock may inherit from and through his father—is specifically limited to cases where paternity is established by clear and convincing proof and to cases where rights of inheritance have not finally vested. All cases in conflict with this decision are hereby expressly overruled.

The application of this decision shall be prospective only but it shall govern any cases pending in the courts of Tennessee on the date this opinion is released, asserting the right of children born out of wedlock to inherit from their natural father.

We reverse the decision denying David Lee Allen the just compensation awarded for the taking of his property by the plaintiff and remand to the trial court for further proceedings not inconsistent with this opinion. Costs will be taxed against the respondent relatives of Mary Frances Marable.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.