Marie FRAKES *v.* Ray HUNT et al

79-33                                      583 S.W. 2d 497

Opinion delivered June 25, 1979
(In Banc)

*Dan Stripling,* for appellant.

*Olmstead, Choate & Cooper,* by: *Stephen Choate* and *House, Holmes & Jewell,* by: *Anne E. Owings,* for appellees.

CONLEY BYRD, Justice. The pivotal issue in this case is whether we should give retroactive effect to *Trimble* v. *Gordon,* 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977). The facts giving rise to this litigation show that Linn Hunt died intestate on April 19, 1972. He had never married but had numerous collateral heirs, appellees Ray Hunt, et al. The principal asset of his estate was more than 400 acres of land which appellees have had possession of since Linn Hunt's death. There is a statute, Ark. Stat. Ann. § 61-141(d) (Repl. 1971), which prevents illegitimate children from inheriting from their fathers. Our statute is almost identical to the Illinois statute declared unconstitutional on equal protection grounds in *Trimble* v. *Gordon, supra,* on April 26, 1977. On September 26, 1977, appellant Marie Frakes brought this action, contending that she was the illegitimate child of Linn Hunt and that in view of *Trimble* v. *Gordon, supra,* she inherited the 400 acres of land that Linn Hunt owned as his sole heir. The trial court held Ark. Stat. Ann. § 61-141(d) (Repl. 1971) was unconstitutional in view of *Trimble* v. *Gordon, supra.* He also found that appellant was the illegitimate child of Linn Hunt. However, the trial court ruled that appellant was not within the class of illegitimates who would be permitted to inherit from the father, since there was no semblance of a parent-child relationship nor was there a formal order establishing paternity. Both parties have appealed.

We, as did the parties in oral argument, recognize that Ark. Stat. Ann. § 61-141(d) (Repl. 1971) is constitutionally invalid under *Trimble* v. *Gordon, supra,* — see *Lucas* v. *Handcock, Adm'x.,* (handed down this same date), 266 Ark. 142, 583 S.W. 2d 491 (1979). In her brief appellant, with respect to the pivotal issue of whether she can rely upon *Trimble* v. *Gordon, supra,* states:

"Appellant recognizes that if Ark. Stat. Ann.

§ 61-141(d) is declared unconstitutional the Court will be required, in some cases, to enunciate rules that will protect those persons who have relied upon the statute. In some cases, equity and justice will require exception to permitting inheritance by illegitimates where heirs or bona-fide purchasers for value have acted in reliance on a justified assumption that no illegitimate exists. Appellant contends that in her case no necessity exists for enunciating such a rule since no bona fide purchasers for value are involved in the litigation and since there has been no reliance upon the non-existence of an illegitimate by those nieces and nephews and children of nieces and nephews who would have inherited from Linn Hunt, but for Appellant."

Arkansas, like most states, permits a person to will his property to whomever he wishes to the exclusion of children. To exclude children, however, Ark. Stat. Ann. §60-507(Repl. 1971), requires that a child be mentioned specifically or as a member of a class. If a person does not elect to make a will, then his property, upon his death, is distributed according to the laws of descent and distribution. Consequently, a person of modest means who is satisfied with the persons to whom distribution of his property would be made under the law of descent and distribution has no reason to go to the trouble and expense of making a will. Had Linn Hunt made an inquiry of his lawyer as to the law of descent and distribution as much as a year before his death, his lawyer with confidence, citing *Labine* v. *Vincent, Adm'r*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed 2d 288 (March 29, 1971), could have informed Linn Hunt that an illegitimate child would not take under the law of descent and distribution.

Furthermore, should we accept appellant's argument, we would run head on into a title problem that could materially hamper the improvement of property, for Ark. Stat. Ann. §37-226 (Repl. 1962) provides:

"If any person entitled to bring any action, under any law of this state, be at the time of the accrual of the cause of action, under twenty-one [21] years of age, or insane or imprisoned beyond the limits of the state, such

person shall be at liberty to bring such action within three [3] years next after full age, or such disability may be removed."

See, also, the pretermitted child statute, Ark. Stat. Ann. § 60-507 (b)(Repl. 1971).

When the Supreme Court of Kentucky was faced with the problem before us in *Pendleton* v. *Pendleton*, (Ky. 1978) 560 S.W. 2d 538 it held:

"In so far as it declares the invalidity of KRS 391.090 this opinion shall have no retroactive effect upon the devolution of title occurring before April 26, 1977 (the date of the *Trimble* opinion), except for those specific instances in which the dispositive constitutional issue raised in this case was then in the process of litigation."

The Supreme Court of Tennessee after holding its illegitimate statute invalid in *Allen* v. *Harvey*, Tenn., 568 S.W. 2d 829 (1978) stated:

"The decision we reach today—that a child born out of wedlock may inherit from and through his father— is specifically limited to cases where paternity is established by clear and convincing proof and to cases where rights of inheritance have not finally vested. All cases in conflict with this decision are hereby expressly overruled.

The application of this decision shall be prospective only but it shall govern any cases pending in the courts of Tennessee on the date this opinion is released, asserting the right of children born out of wedlock to inherit from the natural father."

Based upon the foregoing authorities and to prevent chaotic conditions arising from the lack of title to real property, we affirm the trial court—not for the reasons stated by the trial court—but on the basis that *Trimble* v. *Gordon*, *supra*, should not be applied retroactively.

By a cross appeal, appellees contend that the trial court erred in finding that appellant was the illegitimate child of Linn Hunt. While we have some doubt whether the evidence of paternity is sufficient to sustain the heavy burden of proof required to prove paternity, we need not address that issue as our decision on the retroactive effect of *Trimble* v. *Gordon, supra*, makes the finding of paternity moot.

Affirmed.

FOGLEMAN and PURTLE, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. With all due respect to my brethren of the majority and to the Supreme Courts of Tennessee and Kentucky, I cannot join in the holding that *Trimble* v. *Gordon,* 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977), shall not be applied retroactively. It is not within the power of this court to say whether the decisions of the United States Supreme Court are retroactive. That is a matter for that court and that court alone. See *Laabs* v. *Wisconsin Tax Commission,* 218 Wis. 414, 261 N.W. 404 (1935). There is no indication in the opinion in Trimble that it should be restricted to prospective effect. The fact that there was no such indication weighs heavily in favor of retroactivity. *Stocker* v. *Hutto,* 547 F. 2d 437 (8 Cir., 1977); *Chavez* v. *Rodriguez,* 540 F. 2d 500 (10 Cir., 1976).

In *Trimble,* the United States Supreme Court held that an adjudication in a paternity action was sufficient to es-tablish the illegitimate child's right to claim a child's share without compromising the state's legitimate interest in the accurate and efficient disposition of property at the death of that child's blood father. The case was remanded for further proceedings not inconsistent with the opinion. This would seem to indicate that the decision was not to be given prospective effect only.

Until the decision in *Linkletter* v. *Walker,* 381 U.S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965), both common law and decisions of the United States Supreme Court recognized a general rule of retrospective effect for the constitutional decisions of that court, subject to limited exceptions. The

court declared that it was charting new ground in *Linkletter*, which was an exception to the general rule. In *Linkletter* and *Desist* v. *United States*, 394 U.S. 244, 89 S. Ct. 1030, 22 L. Ed. 2d 248 (1969), the criteria for determing whether such a decision was to be accorded retrospective or prospective effect were established. *Robinson* v. *Neil*, 409 U.S. 505, 93 S. Ct. 876, 35 L. Ed. 2d 29 (1973). But those criteria relate primarily to constitutional rules relating to criminal trials, and have little bearing on equal protection cases. It was pointed out in *Desist*, however, that extent of reliance on the continuing validity of previous decisions was to be applicable only when the purpose of the new constitutional rule did not clearly favor either retroactivity or prospectivity.

The court's decisions denying retroactivity, outside the criminal law field, related primarily to procedural rules. See *England* v. *Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S. Ct. 461, 11 L. Ed. 2d 440 (1964).

We are here dealing with a decision holding unconstitutional a statutory provision not pertaining to criminal law or to procedural rules. It has been said that such a statute must be treated as if it had never been passed. *Morgan* v. *Cook*, 211 Ark. 755, 202 S.W. 2d 355; *State* v. *Williams-Echols Dry Goods Co.*, 176 Ark. 324, 3 S.W. 2d 340; *Cochran* v. *Cobb*, 43 Ark. 180. We have said that no rights can be predicated on an unconstitutional statute. *Road Improvement Dist. No. 4.* v. *Burkett*, 163 Ark. 578, 260 S.W. 718. Perhaps the matter has been overstated in these cases, but none of them have been overruled, and, although I realize this court has given only prospective effect to decisions overruling previous decisions in some cases, I am unaware of any case in which we have said that a decision holding a statute unconstitutional had prospective effect only. To do so is to say, in effect, that the statute was valid today, or perhaps yesterday, but from now on it is invalid. This is certainly not logical.

Perhaps there is a more desirable means of dealing with the effect of a decision holding a statute unconstitutional. Dictum in *Chicot County Drainage District* v. *Baxter State Bank*, 308 U.S. 371, 60 S. Ct. 317, 84 L. Ed. 329 (1940), was the first

indication that the United States Supreme Court would do so. There the court said:

> The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. *Norton* v. *Shelby County,* 118 U.S. 425, 442, 30 L. Ed. 178, 186 6 S. Ct. 1121; *Chicago I. & L. R. Co.* v. *Hackett,* 228 U.S. 559, 566, 57 L. Ed. 966, 969, 33 S. Ct. 581. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidty cannot be justified. Without attempting to review the different classes of cases in which the consequences of a ruling against validity have been determined in relation to the particular circumstances of past transactions, we appropriately confine our consideration to the question of res judicata as it now comes before us.

Ever since *Linkletter* was decided, the United States Supreme Court has struggled with the problem of non-retroactivity, which might have been solved there by applying the result reached in *Chicot County Drainage District* v. *Baxter State Bank,* supra. A four-judge plurality addressed itself to

the problem and invented a new approach in *Lemon* v. *Kurtz-man,* 411 U.S. 192, 93 S. Ct. 1463, 36 L. Ed. 2d 151 (1973). They said:

Claims that a particular holding of the Court should be applied retroactively have been pressed on us frequently in recent years. Most often, we have been called upon to decide whether a decision defining new constitutional rights of a defendant in a criminal case should be applied to convictions of others that predated the new constitutional development. *E. g., Robinson* v. *Neil,* 409 U.S. 505, 35 L. Ed.2d 29, 93 S. Ct. 876 (1973); *Adams* v. *Illinois,* 405 U.S. 278, 31 L. Ed. 2d 202, 92 S. Ct. 916 (1972); *Desist* v. *United States,* 394 U.S. 244, 22 L. Ed. 2d 248, 89 S. Ct. 1030 (1969); *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967); *John-son* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772 (1966); *Tehan* v. *Shott,* 382 U.S. 406, 15 L. Ed. 2d 453, 86 S. Ct. 459 (1966); *Linkletter* v. *Walker,* 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965). But "in the last few decades, we have recognized the doctrine of nonretroactivity outside the criminal area many times, in both constitutional and nonconstitutional cases." *Chevron Oil Co.* v. *Huson,* 404 U.S. 97, 106, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971); *Hanover Shoe* v. *United Shoe Machinery Corp.,* 392 U.S. 481, 20 L. Ed. 2d 1231, 88 S. Ct. 2224 (1968); *Simpson* v. *Union Oil Co.,* 377 U.S. 13, 12 L. Ed. 2d 98, 84 S. Ct. 1051 (1964); *England* v. *State Board of Medical Examiners,* 375 U.S. 411, 11 L. Ed. 2d 440, 84 S. Ct. 461 (1964). We have approved non-retroactive relief in civil litigation, relating, for example, to the validity of municipal financing founded upon electoral procedures later declared unconstitutional, *Cipriano* v. *City of Houma,* 395 U.S. 701, 23 L. Ed. 2d 647, 89 S. Ct. 1897 (1969), and *City of Phoenix* v. *Kolodziejski,* 399 U.S. 204, 26 L. Ed. 2d 523, 90 S. Ct. 1990 (1970); or to the validity of elections for local officials held under possibly discriminatory voting laws, *Allen* v. *State Board of Elections,* 393 U.S. 544, 22 L. Ed. 2d 1, 89 S. Ct. 817 (1969). In each of these cases, the common request was that we should reach back to disturb or to attach legal consequence to patterns of conduct premised either on

unlawful statutes or on a different understanding of the controlling judge-made law from the rule that ultimately prevailed.

**Appellants urge, as they did in the District Court, a strange amalgam of flexibility and absolutism.** Appellants assure us that they do not seek to require the schools to disgorge prior payments received under Act 109; in the same breath, appellants insist that the presently disputed payment be enjoined because an unconstitutional statute "confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton* v. *Shelby County*, 118 U.S. 425, 442, 30 L. Ed. 178, 6 S. Ct. 1121 (1886). Conceding that we have receded from *Norton* in a host of criminal decisions and in other recent constitutional decisions relating to municipal bonds, appellants nevertheless view those precedents as departures from the established norm of Norton. We disagree.

The process of reconciling the constitutional interests reflected in a new rule of law with reliance interests founded upon the old is "among the most difficult of those which have engaged the attention of courts, state and federal . . ." *Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U.S. 371, 374, 84 L. Ed. 329, 60 S. Ct. 317 (1940). Consequently, our holdings in recent years have emphasized that the effect of a given constitutional ruling on prior conduct "is subject to no set 'principle of absolute retroactive invalidity' but depends upon a consideration of 'particular relations . . . and particular conduct . . . of rights claimed to have become vested, of status, of prior determinations deemed to have finality'; and 'of public policy in the light of the nature both of the statute and of its previous application.' " *Linkletter*, supra, at 627, 14 L. Ed. 2d 601, quoting from *Chicot County Drdinage Dist.*, supra, at 374, 84 L. Ed. 329. However appealing the logic of *Norton* may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. The fact of legal life underpins

our modern decisions recognizing a doctrine of non-retroactivity. Appellants offer no persuasive reason for confining the modern approach to those constitutional cases involving criminal procedure or municipal bonds, and we ourselves perceive none.

In *Linkletter*, the Court suggested a test, often repeated since, embodying the recent balancing approach; we looked to "the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Id., at 629, 14 L. Ed. 2d 601. Those guidelines are helpful, see infra, at 201-203, 36 L. Ed. 2d at 162, 163, but the problem of *Linkletter* and its progeny is not precisely the same as that now before us. Here, we are not considering whether we will apply a new constitutional rule of criminal law in reviewing judgments of conviction obtained under a prior standard; the problem of the instant case is essentially one relating to the appropriate scope of federal equitable remedies, a problem arising from enforcement of a state statute during the period before it had been declared unconstitutional. True, the temporal scope of the injunction has brought the parties back to this Court, and their dispute calls into play values not unlike those underlying *Linkletter* and its progeny. But however we state the issue, the fact remains that we are asked to re-examine the District Court's evaluation of the proper means of implementing an equitable decree. Cf. *United States* v. *Estate of Donnelly*, 397 U.S. 286, 295, 25 L. Ed. 2d 312, 90 S. Ct. 1033 (1970); id., at 296-297, 25 L. Ed. 2d 312 (Harlan, J., concurring).

In shaping equity decrees, the trial court is vested with broad discretionary power; appellate review is correspondingly narrow. *Swann* v. *Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 15, 27 n 10, 28 L. Ed. 2d 554, 91 S. Ct. 1267 (1971). Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable. *****

The plurality then disposed of the effect of the statute in the proceeding before it by treating it as an equity proceeding. That position did not draw a majority. One justice concurred only in the judgment. One justice did not participate. Three took the position that the problem of retroactivity involved in criminal cases was inapplicable and that a losing litigant has no equity in the fact that he relied on advice that turned out to be unreliable or wrong. They felt that only a compelling circumstance should limit a judicial ruling to prospective applications.

As appellants have suggested, there is a sound basis for rejecting an attack upon the title to property in the hands of a bona fide purchaser for value in reliance upon a title which had vested in the legitimate heirs of a deceased father. That is not the case here. The statute of limitations on recovery of real property had not run in this case. I find no basis in the evidence for applying the doctrines of laches or estoppel here. The evidence indicates that there has been no administration on Linn Hunt's estate, although he had been dead more than five years when the suit was filed. If there had been a determination of heirship, it would certainly have been made known.

In my opinion, we should assume that *Trimble* has retroactive effect, until the United States Supreme Court has held to the contrary. I would remand this case, however, to the trial court for a reconsideration of the question of paternity. The trial judge found that appellant had shown by a preponderance of the evidence that she was the illegitimate child of Linn Hunt. We have said that this relationship must be shown by clear and convincing evidence. There are reasons to question whether appellant met that test. It is significant to me that the bastardy action was not pursued to judgment, that appellant never had but one conversation with her mother about her paternity (and that was when she was 12 years old), and that when appellant applied for a birth certificate two years before *Trimble* was decided, she did not give Linn Hunt's name as her father. So much depends upon credibility of witnesses and weight given their testimony, in deciding whether evidence is clear and convincing, only the

judge who saw and heard them testify should make that decision.

I am authorized to state that Mr. Justice Purtle joins in this opinion.