**Wilder Alvey WINN, Individually, and as Guardian of the Estate of J. W. Winn, Jr., an Incompetent et al., Appellants,**

v.

**Bill LACKEY et ux., Appellees.**

**No. 5526.**

Court of Civil Appeals of Texas,
Eastland.

June 25, 1981.

Rehearing Denied July 30, 1981.

John H. Green, Odessa, for appellants.

John Watts & Jack Willingham, Willingham & Watts, Hamlin, Allen D. Glenn, Glenn, Thomas, Paynter & Wilson, Abilene, for appellees.

McCLOUD, Chief Justice.

The issue is whether the rule announced in *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), should be applied retroactively to the extent that an illegitimate child, who filed suit after *Trimble*, could inherit from her father who died intestate prior to *Trimble*.

On January 26, 1978, Wilder Alvey Winn, Individually and as Guardian of the Estate of his incompetent brother, J. W. Winn, Jr., sued his two surviving brothers, Curtis G. Winn and Kenneth R. Winn, seeking a partition of the N/2 of Section 85, Block D, H & TC Ry. Co. Survey in Stonewall County. The Winn brothers received their interests in the property from their deceased mother and deceased brothers. Wilder alleged that a predeceased brother, Virgil Winn, who died intestate on April 6, 1973, was unmarried at the time of his death and had no children. On or about April 20, 1978, Wilder Alvey Winn, Individually and as Guardian of the Estate of J. W. Winn, Jr., Curtis G. Winn, and Kenneth R. Winn entered into a written contract to sell the N/2 of Section 85 to Bill Lackey and wife, Beth Lackey, for the sum of $79,680. On May 9, 1978, Doyle E. Rash, as Guardian of the Estate of Julie Marie York, a minor, intervened in the partition suit alleging that the minor, who was born July 12, 1969, was the child and sole surviving heir of Virgil Winn, deceased,

and that she owned an interest in the N/2 of Section 85. On January 4, 1979, Doyle E. Rash, Guardian of the Estate of Julie Marie York, signed a contract agreeing to sell the minor's interest in the property to the Lackeys. Thereafter, the Lackeys sued the Winn brothers and the Guardian seeking specific performance of the contracts of sale. Subsequently, the Lackeys paid the total consideration for the purchase into the registry of the court. The court consolidated the partition and specific performance suits. Following a jury trial, the court rendered judgment that the Lackeys recover from the Winn brothers all of their undivided right, title and interest in and to the 332 acres in dispute. Judgment was entered that the minor owned 30% of the N/2 of Section 85. The Winn brothers were ordered to convey their 70% of the property to the Lackeys. The Lackeys and the Guardian were awarded certain rents and revenues.

The Winn brothers appeal. We reverse and render in part and reform and affirm in part.

When Virgil Winn died on April 6, 1973,[1] Tex. Prob. Code Ann. § 42 provided:

> For the purpose of inheritance to, through, and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit from his mother and from his maternal kindred, both descendants, ascendants, and collaterals in all degrees, and they may inherit from him. Such child shall also be treated the same as if he were a legitimate child of his mother for the purpose of determining homestead rights, the distribution of exempt property, and the making of family allowances. Where a man, having by a woman a child or children shall afterwards intermarry with

---

1. Effective August 27, 1979, Section 42 was amended to provide:

 (b) Paternal Inheritance. For the purpose of inheritance, a child is the legitimate child of his father if the child is born or conceived before or during the marriage of his father and mother or is legitimated by a court decree as provided by Chapter 13 of the Family Code, or if the father

executed a statement of paternity as provided by Section 13.22 of the Family Code, or a like statement properly executed in another jurisdiction, so that he and his issue shall inherit from his father and from his paternal kindred, both descendants, ascendants, and collaterals in all degrees, and they may inherit from him and his issue.

such woman, such child or children shall thereby be legitimated and made capable of inheriting his estate. The issue also of marriages deemed null in law shall nevertheless be legitimate.

On April 26, 1977, the United States Supreme Court in *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) held that an Illinois statute similar to Section 42 before it was amended in 1979, allowing illegitimate children to inherit only from their mothers, while legitimate children could inherit from both their fathers and their mothers, violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. Thereafter, the court in *Lovejoy v. Lillie*, 569 S.W.2d 501 (Tex.Civ.App.–Tyler 1978, writ ref'd n.r.e.), applied *Trimble* in holding that Section 42, as it existed at the time of the death of Virgil Winn, was unconstitutional. The parties in the instant case agree that *Trimble* is controlling, but disagree as to whether *Trimble* should be applied retroactively or prospectively.

Courts of other states have been confronted with this question. In *Frakes v. Hunt*, 583 S.W.2d 497 (Ark.Sup.1979), the intestate died on April 19, 1972. On September 26, 1977, the alleged illegitimate child of the intestate filed suit urging that she was the sole heir of the intestate and under *Trimble* she inherited the intestate's real property. The Supreme Court of Arkansas held, "to prevent chaotic conditions arising from the lack of title to real property," that *Trimble* would not be applied retroactively where the intestate father died before *Trimble*, and suit was not filed until after April 26, 1977, the date the United States Supreme Court decided *Trimble*. The Supreme Court of Arkansas has held that in cases pending on April 26, 1977, the *Trimble* rule applies. *Lucas v. Handcock*, 583 S.W.2d 491 (Ark.Sup.1979); *Stewart v. Smith*, 601 S.W.2d 837 (Ark.Sup.1980). The Supreme Court of Kentucky in *Pendleton v. Pendleton*, 560 S.W.2d 538 (Ky.Sup.1977) held:

> Insofar as it declares the invalidity of KRS 391.090 this opinion shall have no retroactive effect upon the devolution of any title occurring before April 26, 1977

(the date of the *Trimble* opinion), except for those specific instances in which the dispositive constitutional issue raised in this case was then in the process of litigation.

See also: *Murray v. Murray*, 564 S.W.2d 5 (Ky.Sup.1978); *Allen v. Harvey*, 568 S.W.2d 829 (Tenn.Sup.1978); *Nagle v. Wood*, 178 Conn. 180, 423 A.2d 875 (1979); *In re Estate of Rudder*, 78 Ill.App.3d 517, 34 Ill.Dec. 100, 397 N.E.2d 556 (1979); *Herndon v. Herndon*, 388 So.2d 463 (La.App.1980).

We have found no case which applied *Trimble* retroactively to the extent urged by the Guardian in the instant case. Here, as in *Frakes v. Hunt*, supra, the intestate father died before *Trimble*, but the illegitimate child's suit was not filed until after April 26, 1977.

 The Supreme Court in *Trimble* did not discuss the issue of whether the decision should be given retroactive or prospective application. We, therefore, may determine the proper application of the rule. 10 A.L.R.3d 1371, § 5 at 1389–1392, § 8 at 1397–1412. We agree with *Frakes*, that in order to prevent "chaotic" title conditions, *Trimble* should not be applied retroactively to the extent urged by the Guardian.

We point out that in *Lovejoy v. Lillie*, supra, the suit was on file when *Trimble* was decided. The recent case of *Jones v. Davis*, 616 S.W.2d 276 (Tex.Civ.App.–Houston [1st Dist.] 1981) (not yet reported) is not in point. There the intestate died after *Trimble* was decided. The court in *Bell v. Hinkle*, 607 S.W.2d 936 (Tex.Civ.App.–Houston [14th Dist.] 1980, no writ) did not discuss *Trimble* while holding that an illegitimate child who filed suit in 1976 in trespass to try title, and who had not brought a paternity suit under the Texas Family Code, or met any of the other conditions listed in Section 42, as amended in 1979, could not inherit from his alleged father who died intestate in 1969.

 The Winn brothers assert that the attorney for the Lackeys committed reversible error during jury argument. We disagree. The errors complained of were cura-

ble, and in the absence of proper objection were waived. As noted by our Supreme Court in the case of *Standard Fire Insurance Company v. Reese*, 584 S.W.2d 835 (Tex.1979), there "are only rare instances of incurable harm from improper argument."

We have considered the other points of error asserted by the Winn brothers against the Lackeys and they are overruled.

That portion of the judgment awarding Doyle E. Rash, Guardian of the Estate of Julie Marie York, a minor, an undivided 30% interest in the real property in question and certain rents, revenues and personal property, is reversed and judgment here rendered that the Winn brothers own 100% of the property and the minor did not inherit any property interest from Virgil Winn, deceased. The judgment awarding the Lackeys 70% of the real property and ordering specific performance of the contract is reformed to provide that the Lackeys are awarded 100% of the property, and the Winn brothers are entitled to 100% of the total purchase price. The judgment is further reformed to provide that the Lackeys are entitled to recover the full $8,109.52 for rents and revenues received by the Winn brothers since September 1, 1978.

Judgment is reversed and rendered in part, and reformed and affirmed in part.

DICKENSON, Justice, dissenting.

I concur in the court's rulings as to the Lackeys' recovery from the Winn brothers, but I dissent from the court's ruling that Julie Marie York did not inherit her father's interest in the property.

Whether we agree with its wisdom or not, we are bound by the majority opinion in *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). If Illinois deprived an illegitimate child of "equal protection of the laws"[1] by not permitting her to inherit property from the natural father, it seems to me that Texas also deprives Julie Marie York of "equal protection of the laws"[2] by not permitting her to inherit her father's interest in the tract of land involved in this lawsuit.

The scholarly dissent in *Trimble* points out some of the difficulties which result when the Supreme Court engages in "a conscious second-guessing of legislative judgment in an area where (it) has no special expertise whatever."[3] In refusing to give retroactive effect to *Trimble*, the majority opinion in this case points out the "chaotic" effect which *Trimble* could have on the title to real property. It may well be that *Trimble* should be reexamined, but we are bound by that decision. The Supreme Court did not expressly indicate otherwise, and I would apply the general rule that the decision is entitled to retroactive as well as prospective effect.[4] Consequently, I would affirm the judgment of the District Court.

---

1. See Section 1, Fourteenth Amendment to the Constitution of the United States, as adopted in 1868.

2. Supra note 1.

3. 430 U.S. 762, at 783, 97 S.Ct. 1459, at 1471, 52 L.Ed.2d 31, at 48.

4. See 10 A.L.R.3d 1371, § 4, at p. 1384 (1966).