345 S.E.2d 318

**Judith Dell WILLIAMSON, et al.**

v.

**Nedra Medieros GANE, et al.**

**No. 16693.**

Supreme Court of Appeals of
West Virginia.

April 4, 1986.

Dissenting Opinion June 4, 1986.

**444**

Harold E. Bailey, Jr., Wilson & Bailey, Weston, for appellants.

Robert M. Morris, Weston, for appellees.

McGRAW, Justice:

The appellants, Brenda K. Cowgar, Martha Ann Cowgar and Atha Denzil Cowgar, appeal from the denial of their motion to intervene in the underlying partition suit filed in the Circuit Court of Lewis County.

Denzil Atha Cowgar, a widower, died intestate on September 20, 1974. At the time of his death, Mr. Cowgar owned three parcels of land in Lewis County containing an aggregate sum of approximately 194 acres. Surviving him as apparent heirs at law were one son and four daughters. On October 6, 1983, one of the daughters insti-

tuted suit to have the above-mentioned real estate partitioned, naming as defendants the other four children of the decedent. Subsequently, the appellants filed a Motion to Intervene in this partition suit, alleging that they were illegitimate children of the decedent, and, as such, were entitled to be made parties to the suit and thereby each receive a one-eighth interest in the property being partitioned.

In denying the appellants' motion to intervene, the circuit court did not reach the factual question of whether the appellants were indeed children of the decedent. Rather, the circuit court determined that title to the subject real estate vested in the heirs at law of the decedent on the date of his death, and that this Court's later decision in *Adkins v. McEldowney,* 167 W.Va. 469, 280 S.E.2d 231 (1981), should not be applied retroactively to alter the disposition of this decedent's estate.

At the time of the decedent's death, West Virginia law allowed illegitimate children to inherit only from their mothers' estates.[1] On April 26, 1977, the United States Supreme Court concluded that a similar Illinois statute violated the constitutional guarantee of equal protection because it denied illegitimate children the intestacy rights in their fathers' estates otherwise accorded by law to legitimate offspring. *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). Four years later, in *Adkins v. McEldowney, supra,* this Court recognized that, "Our Code, 42–1–5, restricts illegitimates' rights to a greater extent than the Illinois statute declared unconstitutional in *Trimble,* and so certainly the Supreme Court's rule forbids application of our statute." 167 W.Va. 470–472, 280 S.E.2d at 232–33. Accordingly, in *Adkins,* we applied the doctrine of neutral extension to permit illegitimate children to inherit from both mother and father.[2]

---

1. West Virginia Code § 42–1–5: "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, as if lawfully begotten."

2. We also noted in *Adkins* that, "Our legislature may want to provide a statutory scheme com-

patible with our holding today, outlining how legitimate children may prove entitlement to inherit from their fathers. Until such time as it does, trial courts must evaluate each cause on a case-by-case basis." 167 W.Va. 473, 280 S.E.2d at 233. To date, the legislature has not enacted any such provisions.

The sole question presented in the instant appeal is the retroactive effect, if any, of *Trimble* and *McEldowney* upon the devolution of title to the intestate decedent's real estate. The United State Supreme Court has not addressed the prospective/retroactive question as it applies to the *Trimble* decision. After application of *Trimble* to invalidate their own similar statutes, other state courts addressing the prospective/retroactive question have generally limited the retrospective reach of the statutory invalidation. Most recent and most restrictive is the decision of the Supreme Court of South Carolina in *Wilson v. Jones*, 281 S.C. 230, 314 S.E.2d 341, 343 (1984). The *Wilson* court settled upon pure prospectivity, holding that "only those illegitimate children whose fathers died after April 26, 1977, the date of the *Trimble* decision, may inherit from their fathers' estates." 314 S.E.2d at 343. Other courts addressing the issue have accorded limited retroactive effect by also applying the statutory invalidation to matters pending on the date of the *Trimble* decision or the state court decision expressly following *Trimble. See Frakes v. Hunt*, 266 Ark. 171, 583 S.W.2d 497 (1979), *cert. denied*, 444 U.S. 942, 100 S.Ct. 297, 62 L.Ed.2d 309 (1979); *In re Estate of Rudder*, 78 Ill. App.3d 517, 34 Ill.Dec. 100, 397 N.E.2d 556 (1979); *Pendleton v. Pendleton*, 560 S.W.2d 538 (Ky.1978); *In re Estate of Sharp*, 151 N.J.Super. 579, 377 A.2d 730 (1977), *aff'd as modified*, 163 N.J.Super. 148, 394 A.2d 381 (1978); *Winn v. Lackey*, 618 S.W.2d 910 (Tex.Civ.App.1981). The principal reasons cited for so limiting the retrospective reach of *Trimble* are to "prevent chaotic conditions" arising regarding real property titles (*E.g., Frakes, supra*) and disruption of "the orderly process of probate." (*E.g., Wilson, supra*).

Such considerations have a proper place in this retroactivity determination, and in similar temporal questions.[3] However, we conclude that retroactivity may be extended beyond that effectuated in the above-cited decisions in a way that justly and fairly reconciles the constitutional interests in equality recognized in the new rule of law with reliance and finality interests founded upon the former law.[4]

In this respect we find highly persuasive the well-reasoned conclusion of the Supreme Court of Tennessee in *Marshall v. Marshall*, 670 S.W.2d 213 (Tenn.1984). Prior to *Marshall*, the Tennessee Court had invalidated their statute similar to the one in *Trimble*, and held that children born out of wedlock were therefore entitled to inherit from their fathers' estates. *Allen v. Harvey*, 568 S.W.2d 829 (1978). However, in *Allen*, the court had sharply limited the effect of this invalidation by further stating that: "The application of this decision shall be prospective only but it shall govern any cases pending in the courts of Tennessee on the date this opinion is re-

3. *See King v. Riffee,* 172 W.Va. 586, 309 S.E.2d 85, 89 (1983).

4. The following observations of the United States Supreme Court over four decades ago in *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.E. 329 (1940), remain highly relevant to every debate over the prospective/retroactive effect of a decision holding a statute unconstitutional:

The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified. 308 U.S. at 374, 60 S.Ct. at 318–19, 84 L.Ed. 332–33 (citations omitted).

leased, asserting the right of children born out of wedlock to inherit from their natural father." 568 S.W.2d at 835.

Six years later, in *Marshall v. Marshall,* the same court was confronted with a situation where the illegitimate son of an intestate who died in 1975 was seeking to intervene in a partition suit brought by and among the "pre-*Allen*" heirs at law, nieces and nephews of the decedent. Applying the wisdom of Judge Traynor[5] that "prospective only" applications of overruling decisions should be limited to cases where the hardships on those who relied on the old rule outweigh the hardships on those denied the benefit of the new rule, the court concluded that, "Our stated intention in *Allen* to give it 'prospective only' application was, we believe, unnecessarily broad." 670 S.W.2d at 215. The parameters of the *Marshall* court's modified view are as follows:

In civil cases retrospective application of a decision overruling an earlier decision ordinarily is denied only if such an application would work a hardship upon those who have justifiably relied upon the old precedent. The defendants in the instant case have not acted in reliance upon the precedent overruled by *Allen,* they merely assert that they have passively acquired rights as the heirs at law of an intestate property owner; they are not innocent purchasers for value of the property they seek to claim; and, neither do they assert the rights of those who claim under a valid court decree that has determined the identity of the heirs at law of an intestate property owner. *Id.* (citations omitted).

Applying those principles to the case at bar, we first note that the record clearly indicates that no innocent purchasers for value would be prejudiced by retroactive application of *Adkins.* The record herein is not so clear, however, as to whether the "pre-*Adkins*" heirs have relied on the former law and precedent to their detriment, for example, by making substantial improvements upon the subject property.[6]

In final passing, we also note that irrespective of the above factors the present framework of laws relating to intestacy would militate in favor of retroactive application of *Adkins* under particular "unresolved" (i.e. pending) circumstances. The record in the instant case does not disclose whether there was ever a proper administration completed upon the decedent's estate. If not, West Virginia Code § 42–1–9 (1982 Replacement Vol.) is applicable.[7] If administration of the estate was finalized, West Virginia Code § 44–4–18 (1982 Replacement Vol.), permitting reopening in some instances, could possibly provide an alternative recourse in this case. *See also Handenschilt v. Handenschilt,* 129 W.Va. 92, 39 S.E.2d 328 (1946).

In view of the foregoing, we hold that this Court's decision in *Adkins v. McEldowney,* 167 W.Va. 469, 280 S.E.2d 231 (1981), is fully retroactive where there has been no justifiable and detrimental reliance upon the law invalidated therein; where the subject property has not been transferred to an innocent purchaser for value; or where the estate administration is subject to further resolution. Accordingly, the circuit court's denial of the appellants' motion to intervene is reversed, and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BROTHERTON, Justice, dissenting:

In passing on the question of whether a rule change should be made retroactive, there are three factors to consider:

---

5. Traynor, *Quo Vadis Prospective Overruling: A Question of Judicial Responsibility,* 28 Hastings L.J. 533 (1977).

6. Although certainly far from conclusive, the complaint filed by one of the heirs to institute the underlying partition proceeding does appear to allege, in paragraph four therein, that no such improvements have been made.

7. West Virginia Code § 42–1–9 (1982 Replacement Vol.) provides a judicial procedure, triggered by petition, to clear land titles of clouds created by informal "family settlements" regarding an intestate's real estate, or where, for some other reason, no proper administration of the estate was completed.

(1) The purpose to be served by the new rule;

(2) The extent of reliance which has been placed on the old rule; and

(3) The effect on the administration of justice of a retroactive application of the new rule.

*See, e.g., Tehan v. United States,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

In applying these considerations to this case, I believe the majority was unwisely expansive in their holding and I therefore dissent.

I will concede that the purpose to be served in this case, viewed in isolation, would merit a retroactive application. Illegitimate heirs, branded with a status which they had no control of, a status which has no basis on their merit as a person, were partially disinherited by prior West Virginia law. In *Adkins v. McEldowney,* 167 W.Va. 469, 280 S.E.2d 231 (1981) this Court prospectively corrected this wrong. In a perfect world it would be desirable to retroactively recover for these people all that rightfully should be theirs. Unfortunately, a court cannot correct all the errors of a sinful past without wreaking havoc on the future.

The free transferability of land in our society is necessary for growth and economic prosperity. Full retroactive effect of *Adkins* would leave land titles in a blur. Frustration over the uncertainties of titles could hinder land transfers and promote economic stagnation.

The majority opinion was not blind to this peril and set up some conditions to shield innocent purchasers. The shield is defective, however, this being the crux of my dissent. The Court's syllabus, outlining the holding, reads as follows:

> This Court's decision in *Adkins v. McEldowney,* 167 W.Va. 469, 280 S.E.2d 231 (1981), is fully retroactive where there has been no justifiable and detrimental reliance upon the law invalidated therein; where the subject property has not been transferred to an innocent purchaser for

value; *or where the estate administration is subject to further resolution.* (emphasis added).

The exception for justifiable reliance and transfer to an innocent purchaser go far to protect the innocent purchaser, but the last phrase of the syllabus, allowing a retroactive effect where the estate is subject to further resolution, has the capability to cause much mischief.

The majority opinion hints that W.Va. Code § 44–4–18 (1982) could be used to pry open finalized estates in circumstances where illegitimate children were disinherited under the pre-*Adkins* law. This clouds every property which has passed through an estate in the past ten years.[1]

All other courts who have decided this issue have wisely avoided such a result. I believe that the fair administration of justice and the reliance on the old law by innocent parties demands a more restrictive retroactive application of *Adkins.* I therefore respectfully note my dissent.

I am authorized to state that Justice Neely joins with me in this dissent.

---

**1.** The applicable limitations period.  *See* W.Va. Code § 55–2–1 (1981).