Emojean McCLUSKEY, Bobby Gene Lee, and Charles Lene Dennis, Plaintiffs-Appellees,

v.

William WEAVER, Individually and as Administrator of the Estates of Thomas Lee Cox, Annie Weaver, and Henry Casto Cox, Deceased, and Borden Weaver, Individually, Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

March 8, 1982.

Application for Permission to Appeal Denied by Supreme Court March 26, 1984.

Jim H. Camp, Ernest D. Bennett, III, Camp & Bennett, Sparta, for plaintiffs-appellees.

Joe L. Finley, Jr., Sparta, for defendants-appellants.

## OPINION

LEWIS, Judge.

In January, 1977, plaintiffs sued Annie Weaver as the Administratrix of the Estate of Thomas Lee Cox, Annie Weaver individually, and Henry Casto Cox, the sister and brother of Thomas Lee Cox, alleging that plaintiffs were the illegitimate children of Thomas Lee Cox and, as such, were entitled to inherit from their father, Thomas Lee Cox.

Thomas Lee Cox was never married and died intestate in White County, Tennessee, in 1967. His survivors were a sister, Annie Weaver, and a brother, Henry Casto Cox. While suit was pending, both Annie Weaver and Henry Casto Cox died. Annie Weaver died intestate in White County in 1978, leaving two sons, William and Borden Weaver, as her sole heirs. Henry Casto Cox died intestate subsequent to Annie Weaver's death, having never been married and without issue. William Weaver, son of Annie Weaver, qualified as administrator of the estates of Annie Weaver and his uncle, Henry Casto Cox, and was named administrator ad litem of the estate of Thomas Lee Cox. William and his brother, Borden Weaver, were then substituted as defendants in this suit.

Defendants have appealed from a judgment that plaintiffs were the children of Thomas Lee Cox and were entitled to "inherit in equal shares all of the real and personal estate of their deceased father, Thomas Lee Cox" and to inherit equally one-half of the estate of their uncle, Henry Casto Cox, the brother of Thomas Lee Cox.

The first of three issues presented by defendants is: "Whether plaintiffs carried their burden of proving by 'clear and convincing' evidence that Thomas Lee Cox is the father of one or more of the plaintiffs so as to entitle them to inherit from and through him."

It is uncontroverted that plaintiff Emojean McCluskey was born to Daisy McCloud on February 20, 1935; that plaintiff Charles Lene Dennis was born to Daisy McCloud on August 1, 1938; and that plaintiff Bobby Gene Lee was born to Daisy McCloud on October 5, 1942.

Thomas Lee Cox was a rather affluent man for his time who lived in the Bunkum

area of White County and was engaged in the timber and mill business. Beecher McCloud and his family, including his daughter, the mother of plaintiffs, Daisy McCloud, lived from the early 1930's to 1937 in a house in the Bunkum area on property owned by Thomas Lee Cox. Thomas Lee Cox lived with his brother, Henry Casto Cox, on the same property in the "old home place" near the McCloud residence. Beecher McCloud, as well as other members of the McCloud family, worked for Thomas Lee Cox in the timber and mill business. Thomas Lee Cox and Daisy McCloud consorted with each other and slept together not infrequently for an extended period of time continuing for at least seven or eight years. They cohabited from the time Emojean McCluskey was a small child until after plaintiff Bobby Gene Lee was born. While the proof is not overwhelming concerning cohabitation prior to Emojean's birth, there is substantial circumstantial evidence, including statements of Thomas Lee Cox that he supported both Emojean and her mother, that they did cohabit prior to Emojean's birth. The record is devoid of any evidence that Daisy McCloud cohabited with any other man prior to the birth of any of the three plaintiffs.

Plaintiff Emojean McCluskey recalled that when she was four or five years old her mother and Thomas Lee Cox lived in a house on the Cox property. Daisy McCloud and Thomas Lee Cox slept in a large bed, and Emojean slept with them when she was a small child. Geneva Lee, a cousin of plaintiffs, stayed with the McClouds when she was four or five years old and, during that time, Thomas Lee Cox stayed with Daisy McCloud at least a part of the time, spending the night and sleeping with Daisy. During this time, Thomas Lee Cox went back and forth from Daisy's home to his home. The record is replete with evidence regarding the cohabitation of Thomas Lee Cox and Daisy McCloud.

There is evidence in the record that when plaintiff Bobby Gene Lee was born Thomas Lee Cox was "thrilled" and asked Vestal McCloud to "take me up there and let me see my boy." Thomas Lee Cox also made the statement: "Daisy said they were [my] kids and [I] couldn't deny it."

Shortly after the birth of Bobby Gene Lee in October, 1942, a man named Clarence Lee, who was considerably younger than Daisy McCloud and who had lived in the community as a child, came back to the Bunkum area and married Daisy McCloud. Thomas Lee Cox attempted to get Daisy's brother to talk her out of marrying Clarence Lee but to no avail.

Several witnesses testified that they had heard Thomas Lee Cox make statements that the children were his and they knew that Thomas Lee Cox helped to support Daisy and the children until Daisy married Clarence Lee, and that thereafter Clarence Lee would not let Thomas Lee Cox help with the children's support.

Thomas Lee Cox either paid or offered to pay the doctor's bill when Emojean was born. Emojean went by the name of "Cox" until her marriage and used the name "Cox" on various records, including school records and her marriage license.

In 1945 Clarence Lee was charged in the White County Criminal Court of sexually molesting Emojean and Geneva Underwood Lee. During the trial Daisy McCloud testified that Thomas Lee Cox was the father of her children and Thomas Lee Cox testified at the trial and acknowledged that the children were his.

In 1953, when Emojean wanted to get married but was under age, she was informed by the County Court Clerk that someone would "have to sign for her." Thomas Lee Cox was sent for, and the proof is that he signed the marriage record as "Thomas Cox" as her parent. The County Court Clerk testified that he personally knew Thomas Lee Cox and would have known the difference had anyone tried to impersonate him.

■ Defendants correctly insist that for a child born out of wedlock to inherit from and through his father, proof of paternity established after the death of the father

must be by "clear and convincing proof." T.C.A. § 31–206(2)(b); *Allen v. Harvey*, 568 S.W.2d 829 (Tenn.1978).

■ The Chancellor found from all of the evidence "that there was clear and convincing proof . . . ." that plaintiffs were the children of Thomas Lee Cox. This Court reviews findings of fact of the trial court *de novo* upon the record of the trial court accompanied by a presumption of the correctness of the findings unless the preponderance of the evidence is otherwise. Tenn.R.App.P. 13(d).

■ The preponderance of the evidence supports the findings of the Chancellor. The evidence in this record is that Thomas Lee Cox was the only man with whom plaintiffs' mother cohabited prior to their births and, therefore, the only person who had the opportunity to be their father; that he lived openly with their mother; and that he supported all of them at least until their mother married Clarence Lee; that he admitted being their father to others; that he testified in court that he was the father of the children; and that he signed the marriage application of plaintiff Emojean McCluskey as her father or guardian. Defendants have failed in their appellate burden of showing that the evidence preponderates against the findings of the Chancellor that plaintiffs are the children of Thomas Lee Cox. *Capital City Bank v. Baker*, 59 Tenn.App. 477, 442 S.W.2d 259 (1969).

Defendants' next issue is: "Whether or not the plaintiffs' claim is barred by the applicable statute of limitations."

■ Defendants insist that plaintiffs' suit is barred by T.C.A. § 28–3–102, which provides:

*Actions against personal representative.*

(a) All actions against the personal representative of a decedent, for demands against such decedent, shall be brought within seven (7) years after his death, notwithstanding any disability existing; otherwise they will be forever barred.

(b) Nothing in this section shall be deemed to extend the time limited by §§ 30–513, 30–517 and 30–518.

The instant suit is not against the personal representative of the decedent nor is it a claim against the decedent. It is a suit to establish paternity for the purpose of determining intestate succession. This statute is limited to the claims of creditors against the decedent and does not apply to the instant suit. *Thompson v. Coates*, 627 S.W.2d 376 (Tenn.App.1981).

Defendants' last issue is: "Whether or not the plaintiffs' claim is barred by the doctrine of laches."

Judge Cantrell, writing for the Court in *Thompson v. Coates*, stated:

Laches is an equitable doctrine which provides that unreasonable delay will bar a claim if the delay is prejudicial to the defendant. Unexcused delay in asserting his claim is an essential element of laches. *Sunderhaus v. Perel & Lowenstein*, 215 Tenn. 619, 388 S.W.2d 140 (1965). It is our conclusion that the plaintiff in this action did not unreasonably delay bringing his suit. Prior to the enactment of the statute, plaintiff had no judicially cognizable claim. If he had brought suit to attempt to establish paternity, it would have availed him nothing. Neither John Graves nor his estate owed plaintiff any obligation at all. There is nothing in the record to show any prejudice to the defendants resulting from the delay after the statute was passed until suit was brought in July of 1980. Therefore, the plaintiff's claim is not barred by the doctrine of laches.

One further issue should be addressed. Although it is not a part of T.C.A. § 31–206, the Supreme Court in *Allen v. Harvey* [568 S.W.2d 829 (Tenn.1978)], held that the illegitimate child may inherit from and through his father where the rights of inheritance have not finally vested. The defendants contend that the real property vested upon the death of John Graves. By statute, the real property of an intestate decedent vests immediately in his heirs upon his death.

T.C.A. § 31–602(2). To hold, however, that the real property "finally vested" immediately upon the death of the decedent would effectively bar illegitimate children from establishing paternity after the death of the father. Another factor which suggests doubt as to the final vesting of real property upon the death of a decedent is the authority given the representative of an estate to utilize the real property to discharge decedent's obligations.

*Id.* at 380–381.

Plaintiffs filed their suit to establish paternity in January, 1977, and at that time the estate of Thomas Lee Cox had not been closed. Prior to the amendment to T.C.A. § 31–206 in 1978, illegitimate children could not inherit from their father unless the natural parents participated in a marriage ceremony or the issue of paternity had been determined pursuant to Chapter 2, Title 36, of Tennessee Code Annotated, and a court order of paternity and support had been entered. *See* T.C.A. §§ 36–224, 36–234. In addition to the legislature's action in amending T.C.A. § 31–206, the Supreme Court, in *Allen v. Harvey*, 568 S.W.2d at 829, changed the common-law rule to allow children born out of wedlock to inherit from their father in cases in which paternity is established by "clear and convincing proof" and when the rights of inheritance have not finally vested even though there had not been a prior adjudication of paternity under T.C.A. § 36–224. *Thompson v. Coates*, 627 S.W.2d at 378 (Tenn.App.1981).

Here, as in *Thompson v. Coates*, plaintiffs did not unreasonably delay bringing their suit. Prior to the enactment of the statute and the decision in *Allen v. Harvey*, plaintiffs had no judicially cognizable claim.

It therefore results that the judgment of the Chancellor is affirmed with costs to defendants and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

CANTRELL and CONNER, JJ., concur.