# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

**FILED**

**December 5, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

PHILLIP GENE McDOWELL,   )
   )
      Plaintiff/Appellee,   )
   )
   )
VS.   )   Van Buren Chancery
   )   No. 1062
   )
ROBERTA GRISSOM BOYD,   )
Individually and as Administratrix   )   Appeal No.
of the Estate of David Carah Boyd,   )   01A01-9509-CH-00413
Deceased,   )
   )
      Defendant/Appellant.   )

## APPEAL FROM THE CHANCERY COURT FOR VAN BUREN COUNTY
## AT SPENCER, TENNESSEE

## THE HONORABLE CHARLES D. HASTON, JUDGE

For the Plaintiff/Appellee:

David R. Swafford
Pikeville, Tennessee

For the Defendant/Appellant:

Howard L. Upchurch
Pikeville, Tennessee

# AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# OPINION

This appeal involves a posthumous paternity dispute. While the decedent's estate was pending in probate court, a person claiming to be the decedent's son filed a petition in the Chancery Court for Van Buren County against the decedent's estate and his widow seeking to establish the petitioner's right to inherit part of the decedent's estate. The trial court heard the evidence without a jury and determined that the petitioner had presented clear and convincing evidence that he was the decedent's biological son. The decedent's wife asserts on this appeal that the evidence does not support the trial court's conclusion. We affirm the judgment.

## I.

Mavis Imogene McDowell had a romantic affair with David Carah Boyd in the late 1940s. Ms. McDowell was a divorcée in her mid-twenties with two children, and Mr. Boyd was a young, married serviceman. During this affair, Ms. McDowell gave birth to Philip Gene McDowell on January 20, 1949 in Bledsoe County. She did not list the father's name on her son's birth certificate. After Mr. Boyd left the service, he divorced his first wife and moved to Van Buren County where he worked in the timber business. Mr. Boyd married Roberta Boyd in May 1959.

Ms. McDowell raised her three children alone. When Mr. McDowell became old enough to ask about his father, Ms. McDowell told him that Mr. Boyd was his father. She also discouraged him from approaching Mr. Boyd and told him that "all it will do is bring trouble . . . you're doing fine the way you are and leave it the way it is." Accordingly, Mr. McDowell went through his youth and adolescence without a relationship with Mr. Boyd.

Mr. McDowell's parentage was apparently a source of friction between Mr. and Ms. Boyd. When Mr. McDowell was about to graduate from high school and enter the United States Navy, his mother asked him to accompany her to a neighbor's house for an arranged meeting with Mr. Boyd. There, in the presence of Ms. McDowell and James Newby, Mr. Boyd asked Mr. McDowell, "Do you know who

-2-

I am?" To which Mr. McDowell replied, "Yeah, David Boyd, you're my daddy." According to Mr. Newby, Mr. Boyd then embraced Mr. McDowell and gave him a check for $100 as a graduation present.[1]

Mr. McDowell and Mr. Boyd never became close and took no real part in each other's lives during the ensuing years. Mr. Boyd continued in the lumber business in Van Buren and surrounding counties, and Mr. McDowell became a railroad switchman and later settled in Chattanooga where he raised a family of his own. Mr. Boyd asked mutual acquaintances about Mr. McDowell from time to time. On one occasion, Mr. Boyd gave Mr. McDowell some money during a chance encounter at a VFW club. On another occasion in the fall of 1988, Mr. Boyd visited Mr. McDowell in Chattanooga. The two men did not keep in touch with each other after their visit in Chattanooga.

Mr. Boyd committed suicide in June 1993. Because Mr. Boyd did not leave a will, the Van Buren County Probate Court appointed Ms. Boyd as the personal representative of his estate. Ms. Boyd filed a petition for administration representing that Mr. Boyd died without surviving children and that she was his sole heir under the laws of intestate succession. While the estate was pending in probate, Mr. Boyd's older sister informed Mr. McDowell that Mr. Boyd had left an estate valued at approximately $60,000. In July 1993, Mr. McDowell filed a petition in the Chancery Court for Van Buren County seeking to establish that Mr. Boyd was his biological father for inheritance purposes. Ms. Boyd opposed the petition. The trial court heard the evidence without a jury and concluded that Mr. McDowell had proved by clear and convincing evidence that Mr. Boyd was his biological father.

**II.**

---

[1]After Mr. Boyd's check was dishonored for insufficient funds, Ms. McDowell asked one of his brothers to return the check to Mr. Boyd. Mr. Boyd later honored his gift by giving his brother one hundred dollars and by requesting him to give the money to Ms. McDowell to give to her son.

The sole question presented by this appeal is whether Mr. McDowell has provided sufficient credible proof that Mr. Boyd was his biological father. Children may assert paternity claims after their father's death, but in order to be successful, they must establish paternity by clear and convincing evidence. *See* Tenn. Code Ann. § 31-2-105(a)(2)(B) (Supp. 1997); *Bilbrey v. Smithers*, 937 S.W.2d 803, 808 (Tenn. 1996); *Woods v. Fields*, 798 S.W.2d 239, 242-43 (Tenn. Ct. App. 1990).

The clear and convincing standard of proof falls somewhere between the preponderance-of-the-evidence standard in civil proceedings and the beyond-a-reasonable-doubt standard required in criminal proceedings. *See In re Estate of Walton*, 950 S.W.2d 956, 960 (Tenn. 1997). The Tennessee Supreme Court has recently explained that clear and convincing evidence "must produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Fruge v.* Doe, 952 S.W.2d 408, 412 n.2 (Tenn. 1997); *see also O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

In this case, the trial court heard the testimony of eighteen witnesses, considered another witness's deposition, and reviewed twenty-two exhibits, including a number of photographs of Mr. McDowell and Mr. Boyd. The trial court also was able to observe Mr. McDowell first-hand and to evaluate his and other witnesses's demeanor and credibility. In its own words, the court concluded that "the overwhelming weight" of the evidence proved that Mr. Boyd was Mr. McDowell's biological father. We must now review this conclusion in two steps. First, in accordance with Tenn. R. App. P. 13(d), we must determine whether the evidence supports the facts found by the trial court. *See In re Estate of Walton*, 950 S.W.2d at 959-60; *In re Estate of Armstrong*, 859 S.W.2d 323, 328 (Tenn. Ct. App. 1993). Second, we must then determine whether these facts, when considered together, demonstrate clearly and convincingly that Mr. Boyd was Mr. McDowell's biological father.

**III.**

-4-

Parentage may be proved using several different types of evidence. In addition to direct evidence of paternity through blood tests, the courts may consider (1) the declarations and conduct of the child's biological mother, *see In re Estate of Walton*, 950 S.W.2d at 959, (2) acknowledgment by the father, *see Allen v. Harvey*, 568 S.W.2d 829, 835 (Tenn. 1978), (3) family resemblance, *see In re Estate of Armstrong*, 859 S.W.2d at 326, and (4) evidence concerning access, opportunity, and capacity to have children. Neither party in this case offered evidence of the results of blood testing, even though this evidence would have been the most reliable and conclusive available. Instead, they undertook to support their claims using mainly anecdotal evidence of Ms. McDowell's and Mr. Boyd's statements and conduct during their lifetimes.

## A.

### EVIDENCE OF ACCESS AND CAPACITY

The record contains undisputed evidence that Ms. McDowell and Mr. Boyd were involved in a sexual relationship before Mr. McDowell was born. This evidence provides clear and convincing proof that Mr. Boyd had access to Ms. McDowell and the opportunity to become Mr. McDowell's father. In addition, the record contains no other credible proof that someone other than Mr. Boyd could have been Mr. McDowell's father.

Ms. Boyd attempted to undercut this evidence with proof that Mr. Boyd was incapable of having children because of a childhood illness. She presented no competent medical evidence to support this claim but rather relied on circumstantial evidence consisting of statements Mr. Boyd had made to her and to another woman with whom Mr. Boyd had an extra-marital affair in the mid-1960s. However, Mr. Boyd's sister and sister-in-law testified that Mr. Boyd's first wife became pregnant some time in the 1940's when she and Mr. Boyd were stationed in California.

Ms. Boyd has the burden of proving that Mr. Boyd was incapable of fathering children. After considering the conflicting proof, the trial court determined that Ms. Boyd's proof "never rose to more than mere supposition from circumstances that were less than convincing to the court." We have no basis to disagree with this conclusion.

**B.**

**DECLARATIONS AND CONDUCT OF MS. MCDOWELL**

The record contains no evidence that Ms. McDowell ever named anyone other than Mr. Boyd as Mr. McDowell's father. She told Mr. McDowell repeatedly that Mr. Boyd was his father, and she also acknowledged the fact to her sister, to a close friend and neighbor who was a member of Mr. Boyd's family, and to Mr. Boyd's brother. In addition, Ms. McDowell did not contradict either Mr. Boyd or Mr. McDowell during the meeting prior to Mr. McDowell's graduation from high school when Mr. McDowell identified Mr. Boyd as his father, and Mr. Boyd acknowledged his son by embracing him and giving him a gift.

Ms. Boyd points out that Ms. McDowell told her on one occasion that Mr. Boyd was not Mr. McDowell's father. This occurred during an unexpected confrontation at Ms. McDowell's home. Apparently while Ms. McDowell was entertaining guests, Ms. Boyd drove up to Ms. McDowell's house and began to argue with her over whether Mr. Boyd was Mr. McDowell's father. Finally, rather than provoking an additional confrontation and in order to placate Ms. Boyd who had become extremely angry, Ms. McDowell told Ms. Boyd that Mr. McDowell "[did] not belong to David, and go on and forget about it." In light of the circumstances in which it was made, this statement does not undermine the clear probative force of Ms. McDowell's other statements and conduct identifying Mr. Boyd as Mr. McDowell's father.

**C.**

**ACKNOWLEDGMENT BY MR. BOYD**

Mr. Boyd's statements concerning Mr. McDowell were not consistent. After he married Ms. Boyd, the subject of Mr. McDowell's parentage was obviously a sore point, and so Mr. Boyd avoided addressing the subject directly with her. Yet, he acknowledged to friends, including James Newby, John Scarbrough, Eula Hale, and J.C. Womack, that Mr. McDowell was his son. He also told Ms. Boyd and other family members that Mr. McDowell was not his son.

The trial court heard the conflicting accounts of Mr. Boyd's statements about Mr. McDowell. Acknowledging that the issue was a difficult one for the Boyds, the trial court opined that "[t]his may explain why Mr. Boyd spoke rather freely regarding [Mr. McDowell] to those outside [Ms. Boyd's] family circle and less so to those inside her family." We agree that this analysis provides the most realistic and common-sense explanation for Mr. Boyd's inconsistent statements. Accordingly, we cannot conclude that the evidence preponderates against the trial court's conclusion that Mr. Boyd acknowledged Mr. McDowell as his son.

## D.

### THE EVIDENCE OF PHYSICAL RESEMBLANCE

As a final matter, the parties presented photographs of Mr. Boyd and Mr. McDowell purporting to demonstrate their common physical features. While these photographs do not show a striking family resemblance, they unquestionably show that Mr. Boyd and Mr. McDowell have at least three common facial features. The shape and position of both men's ears are similar. Both men have sloping, raised center brows, and both men have long, oval faces. In addition to the photographs, two of Mr. Boyd's brothers and Mr. McDowell's aunt testified that Mr. McDowell walked like his father. This evidence of common facial characteristics and mannerisms further buttresses Mr. McDowell's proof that Mr. Boyd was his father.

## IV.

The evidence in this case is not free of contradiction. However, the proof of Ms. McDowell's repeated insistence that Mr. Boyd was Mr. McDowell's father, coupled with Mr. Boyd's solemn acknowledgment of his son on the occasion of Mr. McDowell's graduation from high school, provides clear and convincing evidence that Mr. Boyd was Mr. McDowell's biological father. Accordingly, we affirm the trial court's conclusion that Mr. Boyd was Mr. McDowell's biological father. We remand the case to the trial court for whatever further proceedings may be required, and we tax the costs of this appeal to the Estate of David Carah Boyd and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

-8-

_____
SAMUEL L. LEWIS, JUDGE