**390**

Billie Jean Meriwether DECKER,
Plaintiff-Appellant,

v.

Hewitt P. MERIWETHER, et al.,
Defendants-Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Sept. 9, 1985.

Application for Permission to Appeal
Denied by Supreme Court
Jan. 21, 1986.

Hughie Ragan, Jackson, for plaintiff-appellant.

Robert Conley, Asst. Atty. Gen., Nashville, for plaintiffs-appellees; W.J. Michael Cody, Atty. Gen., Nashville, of counsel.

William C. Bell, Jr., H. Jack Holmes, Roy B. Morgan, Jr., John Van Den Bosch, Jr.,

Jackson, J. Thomas Caldwell, Ripley, William Hubbard, Jenifer H. Small, Nashville, for defendants-appellees.

CRAWFORD, Judge.

These cases involve questions of legitimacy and inheritance. Plaintiff, Billie Jean Meriwether Decker, appeals from the final judgment of the chancery court denying recovery and dismissing her complaints.

Plaintiff, the daughter of William P. Meriwether, deceased, filed two lawsuits involving numerous defendants, many of whom are the same in both actions and all of whom are related to William P. Meriwether. Identical or very similar legal issues are involved in both cases. The cases were consolidated for trial in the court below and have been consolidated for the purposes of appeal.

In both cases plaintiff alleged and defendants denied that she is the legitimate daughter of William P. Meriwether, who died intestate July 2, 1977. Plaintiff's first complaint filed November 11, 1978, alleges two distinct inheritance claims. First, plaintiff claims an interest in property devised under the will of William P. Meriwether's father, John H. Meriwether, Sr., who died March 19, 1956. Second, she claims by virtue of intestate succession an interest in property acquired by her father under the will of his sister, Mary Etta Buntin, who died in 1963. Plaintiff's second complaint filed March 11, 1982, claims an interest in property passing under the will of her father's aunt, Lois Ingram, who died January 24, 1978. Defendants assert that plaintiff is not entitled to the relief sought because she is not the legitimate daughter of William P. Meriwether and, as an illegitimate child, cannot take by virtue of the wills involved and the established law of this state.

Plaintiff presents in her brief 12 issues for review by this court, but we have rephrased the issues as follows:

1. Whether the trial court erred in finding that plaintiff is not the legitimate daughter of William P. Meriwether.

2. Whether the trial court erred in finding that plaintiff could not take under the John H. Meriwether, Sr., will.

3. Whether the trial court erred in finding that plaintiff cannot take under the Lois Ingram will.

4. Whether the trial court erred in finding that plaintiff could not take by intestate succession a share of the property vested in her father by the will of Mary Etta Buntin.

We will now consider the issues.

1. Whether the trial court erred in finding that plaintiff is not the legitimate daughter of William P. Meriwether.

In support of her assertion that she is the legitimate daughter of William P. Meriwether and her mother, Ann Payton, plaintiff offered proof that she was born in Louisiana on April 29, 1929, when her father was living in Louisiana with her mother and introduced a Louisiana birth certificate which indicated that she was the legitimate child of these parties. Later, she and her parents lived together in Oklahoma, a state that recognizes common law marriage, before they moved to Jackson, Tennessee. Through the years, her father always held her out to be his daughter and provided for her financial support. He attended her wedding as the father of the bride and gave her in marriage. Plaintiff claims that she and the defendants thought that she was legitimate until after her father's death. At that time it was discovered that he was not divorced until 1945 from Eloise Henning who he married in 1912.

■ The proof was uncontroverted that plaintiff's father and mother never had a formal marriage ceremony and that there were never any legitimation proceedings involving plaintiff. Plaintiff asserts that defendants are judicially estopped to deny her legitimacy because her father acknowledged that she was his daughter in previous chancery court litigation. The record in that litigation reflects, and the chancellor found, that there was no issue concerning legitimacy nor was there any statement by plaintiff's father concerning plaintiff's legitimacy. Plaintiff further contends that

a valid marriage existed between her father and mother on the basis of estoppel. However, the record reflects, and the chancellor found, that a valid marriage existed between plaintiff's father and Eloise Henning continuously from 1912 until their divorce in 1945. The prior subsisting marriage prevents the establishment of a valid subsequent marriage and thus there could be no marriage by estoppel. *See Moore v. Moore*, 102 Tenn. 148, 154, 52 S.W. 778, 780 (1899).

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. T.R.A.P. 13(d). The evidence in this case does not preponderate against the findings of the chancellor.

We concur in the chancellor's ruling that plaintiff is not the legitimate daughter of William P. Meriwether.

2. Whether the trial court erred in finding that plaintiff could not take under the John H. Meriwether, Sr. will.

The pertinent parts of John H. Meriwether, Sr.'s will, written in 1952 and probated shortly after his death on March 19, 1956, state:

\*     \*     \*     \*     \*     \*

### Article IV

I will and devise to my Trustees hereinafter named, the four tracts of real estate hereinafter mentioned in this Article of my will, TO HAVE AND TO HOLD THE SAME, IN TRUST, NEVERTHELESS, until the death of the last of my sons, W.P. Meriwether and Hewitt P. Meriwether, for the uses and purposes hereinafter set out, said tracts of real estate being described as follows, to-wit:

. . .

\*     \*     \*     \*     \*     \*

Upon the death of the last of my said sons, W.P. Meriwether and Hewitt P. Meriwether, and the termination of this trust as hereinabove provided, I will and devise the hereinabove described four tracts of land to my heirs at law.

\*     \*     \*     \*     \*     \*

### Article V

I will and devise the following tract of land to my son, W.P. Meriwether, for and during his natural life, to wit:

\*     \*     \*     \*     \*     \*

Upon the death of my son, W.P. Meriwether, I will and devise the tract of land hereinabove mentioned to his issue. In the event the said W.P. Meriwether is not survived by issue, then I will and devise the tract of land hereinabove mentioned to his heirs at law.

\*     \*     \*     \*     \*     \*

### Article XII

Whenever in this my last will and testament, the word "issue" is used, such word means the lawful issue and is intended to include the children, grandchildren, and lineal descendants more remote of the ancestor referred to, and such word "issue" wherever used in this will shall be given such construction.

Defendants contend that the testator's testamentary intent was to provide for the children of the lawful marriage of William P. Meriwether and not to provide for any illegitimate children. Plaintiffs assert, on the other hand, that the will contained nothing to show that the testator had any testamentary intent to exclude her from inheriting.

The cardinal rule in the construction of wills is to ascertain the testator's intent. This intent is determined from the specific words of the will, the context in which the words are used, and the general scope and purpose of the will, read in the light of surrounding circumstances. *Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn.App.1983).

Defendants introduced proof that plaintiff and her mother never participated in Meriwether family activities, that they were never invited to John H. Meriwether, Sr.'s home and that plaintiff's name was never mentioned or discussed by the testator. Proof was also introduced that the

testator had verbally expressed that only legitimate children should inherit his estate. Plaintiff offered no proof concerning the surrounding circumstances.

In the case before us, the testator provided for property to pass to "my heirs at law" and also provided for property to pass to W.P. Meriwether's "issue." The will specifically provided that "issue," as used in the will, means "lawful issue." Where a will is drafted by an attorney, as in the case at bar, technical words should be given their technical meaning unless the testator's intention is determined to be clearly to the contrary. *Fisher v. Malmo, supra* at 46.

■ Tennessee law defines "heirs" as the class of persons upon whom descent is cast by statute. *Patterson v. Alexander,* 509 S.W.2d 834, 835 (Tenn.1974). At common law inheritance by illegitimate children was precluded and the statutes of descent did not include illegitimates except as specifically provided. *See Allen v. Harvey,* 568 S.W.2d 829 (Tenn.1978). A will shall be construed to speak as of the date of the testator's death. *See* T.C.A. § 32–3–101 (1984). In 1956, at the time of John H. Meriwether, Sr.'s death, illegitimate children could inherit from their father only if they were previously legitimated by court order, T.C.A. § 36–301 *et seq.* (1955), legitimated by intermarriage of their father and mother, T.C.A. § 36–307 (1955), or if a court order of paternity and support had been entered pursuant to Chapter 2 of Title 36, Tennessee Code Annotated. Since plaintiff did not qualify for inheritance under any of these criteria, she could not be John H. Meriwether, Sr.'s heir at law.

Plaintiff also asserts that she should take as William P. Meriwether's "issue." The word "issue" includes all persons who have descended from a common ancestor, and unless the context indicates otherwise means lineal descendants without regard to degree of proximity or remoteness. *Burdick v. Gilpin,* 205 Tenn. 94, 109, 325 S.W.2d 547, 554 (1959). However, in the case before us, the testator went further and specifically qualified the word issue to mean only "lawful issue." The use of these technical words and the surrounding circumstances as heretofore set out indicate that it was clearly the testator's intent that only the legitimate children of William P. Meriwether would take under this provision.

We concur in the ruling of the chancellor that plaintiff is not entitled to take under the will of John H. Meriwether, Sr.

3. Whether the trial court erred in finding that plaintiff cannot take under the Lois Ingram will.

■ Lois Ingram, William P. Meriwether's aunt, died January 24, 1978, and her will left the residuary estate to William P. Meriwether and his brother Hewitt P. Meriwether. William P. Meriwether died intestate and predeceased his aunt, thus bringing into play the anti-lapse statute, T.C.A. § 32–3–105 (1984) which provides:

32–3–105. *Death of devisee or legatee before death of testator.*—Whenever the devisee or legatee to whom, or any member of a class to which, an immediate devise or bequest is made, dies before the testator, or is dead at the making of the will, leaving issue which survives the testator, the issue shall take the estate or interest devised or bequeathed which the devisee or legatee or the member of the class, as the case may be, would have taken, had he survived the testator, unless a different disposition thereof is made or required by the will.

Plaintiff's claim that she is entitled to the benefit of this statute depends upon the definition of "issue" as used in the statute. In order to determine the meaning of the word "issue" as used in the lapsed legacy statute, the legislative intent must be ascertained. In *White v. Kane,* 178 Tenn. 469, 159 S.W.2d 92 (1942), our Supreme Court concluded that the legislative intent was to save the devise or legacy to the donee's family in accordance with the laws of descent and distribution, and that there was no legislative intent to declare a different rule of inheritance in the case of the gifts so saved.

In Chapter 25, Public Acts of 1977, effective April 1, 1977, the legislature, among other things, provided express definitions for various terms pertaining to the law of descent and distribution. Since these definitions were in effect at the time of Lois Ingram's death on January 24, 1978, we quote as codified the definitions pertinent to the issue before us. T.C.A. 31–1–101 (1984).

*Definitions*—In this title, unless a different meaning is clearly intended:

(1) "Child" includes any individual, adopted or natural born, entitled to take as a child under this title by intestate succession from the parent whose relationship is involved and excludes any person who is only a stepchild, a foster child, a grandchild or any more remote descendant;

\* \* \* \* \* \*

(6) "Issue" of a person means all his lineal descendants (adopted as well as natural born) of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this title;

(7) "Parent" includes any person entitled to take, or who would be entitled to take if the child, adopted or natural born, died without a will, as a parent under this title by intestate succession from the child whose relationship is in question and excludes any person who is only a stepparent, foster parent, or grandparent;

\* \* \* \* \* \*

In January, 1978, a person born out of wedlock could only be considered a child of the father for the purposes of inheritance if its parents had participated in a marriage ceremony or the paternity of the child had been established as provided in Chapter 2, Title 36, Tennessee Code Annotated. Chapter 25, Public Acts of 1977, Section 4(c)(2)(A), (B), T.C.A. § 31–206.

We conclude from the foregoing that the legislative intent as of January, 1978, was that "issue" as used in the anti-lapse statute did not include illegitimate children.

Therefore, plaintiff is not entitled to take under the provisions of Lois Ingram's will.

4. Whether the trial court erred in finding that plaintiff could not take by intestate succession a share of the property vested in her father by the will of Mary Etta Buntin.

When plaintiff's father died intestate July 2, 1977, he was the owner of a one-fourth undivided interest in land acquired under the will of his sister, Mary Etta Buntin. After the interest in the land was transferred among certain of the William P. Meriwether children, it was sold to third parties in the fall of 1977. Plaintiff contends that she is entitled to a child's share in this property · by virtue of her father's intestate death.

In *Allen v. Harvey*, 568 S.W.2d 829 (1978), an opinion filed June 29, 1978, our Supreme Court held that a child born out of wedlock may inherit from and through its father where paternity is established by clear and convincing proof and where rights of inheritance have not finally vested. The Court specifically held that the application of the decision was to be prospective only. However, in *Marshall v. Marshall*, 670 S.W.2d 213 (Tenn.1984), the Court again considered *Allen*. In *Marshall* the decedent died in March of 1975 leaving only one child—a son born out of wedlock. On September 15, 1978, this illegitimate son filed a complaint to enjoin further proceedings for a partition of the decedent's land. The Court observed that a literal application of the language in *Allen* would result in denying to the plaintiff the benefit of the *Allen* holding and declined to make such a literal application. The Court noted the increased use of giving "prospective only" application to decisions that overrule outmoded precedent and stated at page 215:

In the article cited [Traynor, *Quo Vadis Prospective Overruling: A Question of Judicial Responsibility*, 28 Hastings L.J. 533 (1977) ], however, Judge Traynor points out that "prospective only" application of an overruling decision should be limited to a case in which the hardship on

a party who has relied on the old rule outweighs the hardship on the party denied the benefit of the new rule; and, he has pointed out:

> "Since there are few cases where such rigorous demonstrations can be made, there should be few occasions when prospective overruling can justifiably displace the normal retroactive application of the overruling decision." 28 Hastings L.J. at 561–2.

*Id.* at 215.

The Court went on to say:

> In civil cases retrospective application of a decision overruling an earlier decision ordinarily is denied only if such an application would work a hardship upon those who have justifiably relied upon the old precedent. Annot.: Overruling Decisions—Application, 10 A.L.R.3d 1371, 1386 (1966); 28 Hastings L.J. 543 (1977), *et seq.* The defendants in the instant case have not acted in reliance upon the precedent overruled by *Allen*, they merely assert that they have passively acquired rights as the heirs at law of an intestate property owner; they are not innocent purchasers for value of the property they seek to claim; and, neither do they assert the rights of those who claim under a valid court decree that has determined the identity of the heirs at law of an intestate property owner. In short, no reason appears in this record for denying to Odis Marshall, plaintiff, the benefit of our ruling in *Allen.*

*Id.* at 215.

Defendants in the case before us contend that to allow plaintiff to recover would work an undue hardship on them because they have conveyed the property to a third party, and that therefore the rule of *Marshall* should not be applied. We disagree. The only difference in this case and *Marshall* is that in this case the legitimate children of the deceased have sold the property for valuable consideration, while in *Marshall* the supposed heirs were dividing the property. In both cases the defendants had ostensibly acquired something valuable. There might be a hardship involved upon *the third party purchaser* of the property if we attempted to restore matters to status quo. However, we fail to see a hardship sustained by these defendants who obtained valuable consideration from the sale of the property. Is the hardship of requiring the defendants to pay to plaintiff her share of the consideration greater than the hardship imposed on the plaintiff in being deprived of her share of the property without any consideration? If it is, we fail to see it. Pursuant to the holding in *Marshall v. Marshall, supra,* we hold that plaintiff is entitled to a child's share of her father's interest in the Buntin property.

In summary, we reverse the judgment of the trial court denying plaintiff a child's share of her father's interest in the Buntin property. Judgment is awarded to plaintiff against those co-tenants in common who assumed ownership of the property upon the intestate death of her father for the value of a child's share plus interest thereon from the date of her father's death. The judgment of the trial court in all other respects, except as to court costs, is affirmed. The case is remanded to the trial court for further proceedings in accordance with this opinion to determine the amount of the judgment in favor of plaintiff. The costs in this court and in the trial court are assessed one-half to plaintiff and one-half to defendants.

NEARN, P.J. (W.S.) and HIGHERS, J. concur.

## ORDER ON PETITION TO REHEAR

Plaintiff-appellant has filed a petition to rehear asserting, *inter alia,* that the court mistakenly assumed that all of the Buntin property in which the Court declared plaintiff was entitled to a child's share had been transferred to third parties. This assertion is not contradicted by appellees' response to the petition allowed by court order.

Accordingly, the opinion should provide that as to any part of the property previously conveyed to third parties, plaintiff is awarded judgment against those co-tenants in common who assumed ownership of the

property upon the intestate death of her father for the value of a child's share plus interest thereon from the date of her father's death. Except as amended the opinion stands as written.

·The petition to rehear in all other respects is denied.

### ORDER ON APPELLEES' PETITION

Certain of the appellees have filed a "Petition for Rehearing; Alternatively, Motion to Allow Hearing on Appellant's Petition to Rehear."

Appellant's Petition to Rehear, referred to above, was seasonably filed and in the opinion of this Court the grounds relied upon were without merit. However, appellant pointed out a mistake of fact in the opinion which prompted this Court to request a response from appellees. Appellees responded to the petition to rehear, but did not dispute appellant's statement concerning the mistake of fact. The original opinion stated that appellant was entitled to a child's share of the property referred to in the opinion as the Buntin property. The record was unclear but seemed to indicate, and the appellees' brief asserted, that all of the Buntin property had been sold to third parties. In order to effectuate the Court's findings, a judgment was awarded to the appellant for the value of a child's share.

The appellant's assertion in the Petition to Rehear that a mistake of fact had been made, was conceded by appellees' silence. When it was conceded that all of the Buntin property had not been conveyed to third parties, appellant was still entitled to a child's share in the Buntin property, but her money judgment should be limited only to that part of the property previously transferred to third parties. The case was remanded to the trial court for further proceedings in accordance with the opinion which proceedings will determine appellant's interest in the specific properties and the amount of any money judgment.

Appellant's Petition to Rehear was denied, although the Court did correct the previous mistake of fact. The Court could have reached the same result by granting the petition to rehear based on the petition and the response thereto. For a correction of this factual mistake an order to consider the petition to rehear on this basis would be "proper under the circumstances." *See* T.R.A.P. 39(e).

Accordingly, appellees' petition is in all respects denied.